ESTATE OF FRANK F. TILLOTSON, ISABELLE I. TILLOTSON AND EUGENE SIEGEL, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100563. Promulgated June 5, 1941.

*Ralph W. Barbier, Esq.*, for the petitioner.
*Philip M. Clark, Esq.*, for the respondent.

OPINION.

KERN: Respondent relies upon article 16 of Regulations 80 [1] in this proceeding as the basis for the inclusion of the various assets within decedent's taxable estate. This Board and the courts have accorded to that article of the regulations the force and effect of law, with the result that any transfers made by a decedent within two years of his death without adequate consideration therefor are presumed to have been made in contemplation of death, and, therefore, are includable within decedent's gross estate pursuant to section 302 (c) of the Revenue Act of 1926. Therefore, respondent rests his case mainly on a legal presumption. There is, of course, another time-honored presumption working in the favor of the respondent, i. e., that the determination of the Commissioner is assumed to be correct. *Wiget* v. *Becker*, 84 Fed. (2d) 706. Both of these presumptions must be overcome before the taxpayer may prevail in this proceeding.

A showing of facts to this Board sufficient to establish that the presumption established by article 16 of Regulations 80 has no application to the present situation would also overcome the presumption in favor of the correctness of the Commissioner's determination. The respondent then would have the burden of coming forward with evidence sufficient to overcome any conclusions in petitioner's favor which might be formed from the evidence already of record. *Rankin* v. *Commissioner*, 84 Fed. (2d) 551; *United States* v. *Pulver*, 54 Fed. (2d) 261.

Our first inquiry, therefore, is whether this petitioner has introduced evidence sufficient to overcome the presumption established by the regulations. We believe that the petitioner has done this. In the first place, the decedent had no knowledge of his ailment. This is nowhere contradicted in the evidence. On the contrary, the evidence discloses that the decedent was an active man, very proud of the health he enjoyed at the age of seventy, and fully expected to live for another decade.

He was an elderly man who had devoted what may be termed the best part of his life to building up a business, raising a family, and providing for their economic security. In the early part of 1934 decedent resigned as president of the Federal Discount Corporation, a position which he had held since 1919. His son succeeded him and decedent became chairman of the board of directors. He resigned this latter position, however, before the close of the year and went home to his farm in the country to relax and enjoy the fruits of his

---

[1] * * * * * *

Any transfer without an adequate and full consideration in money or money's worth, made by the decedent within two years of his death, of a material part of his property in the nature of a final disposition or distribution thereof, is, unless shown to the contrary, deemed to have been made in contemplation of death. * * *

labors. There is nothing unusual about such conduct. Business men do not retire merely because they feel death is "just around the corner." The most usual reason is a desire to shed all financial cares and thus enjoy more fully the remaining years of life and make those remaining years more in number. This, we are convinced, was the decedent's reason for retiring.

In the year prior to this retirement he had set the stage for such a move. In November 1933 he surrendered his life insurance policies and with the cash obtained purchased annuities, the total benefits from which amounted to far less than the beneficiary would have received on his death had he kept the life insurance in effect. This transaction points undeniably to the fact that decedent anticipated life, not death, and wanted security for his own protection so that he could live the rest of his life in comfort. His reason for buying additional annuities for his wife further bears out this conclusion. As we have indicated in our findings of fact, *supra*, the gift of these annuities to the wife was not in contemplation of death. On the contrary, it was in contemplation of his living at least ten years more and because of his concern that he might outlive his wife.

The transaction whereby the wife acquired sole ownership of the realty formerly held by the decedent and his wife as tenants by the entirety was not carried out by him in contemplation of death. *United States* v. *Wells*, 283 U. S. 102; *United States Trust Co. of New York, Executor*, 14 B. T. A. 312. At this stage of decedent's retirement he had manifested certain desires, the foremost being a desire to be freed from any financial worries and be left to enjoy life in peace and a second desire, almost a resignation, to conduct himself according to the wishes of his family. Perhaps this latter desire can be said to modify the former, the idea being to avoid arguments. If an issue arose, the decedent seems to have willingly ceded in favor of his family's wishes just to maintain harmony and quiet. Under the power of attorney, the wife gave decedent what amounted to subsistence money. Her motives in doing this probably were based on her notion that the decedent was not capable mentally of managing his financial affairs. This notion was a mistaken one, according to the diagnosis of the alienist. But the decedent's motive in allowing himself to be put on an allowance was nothing more than we have shown above. The evidence discloses that he at first resented her action, but, when he saw that she was insistent, gave in.

When the wife suggested that it would make her and the children happier if he made a present to the children so that they could have more security, he again ceded to her wishes. After all, he and his wife had their annuities and the farm, so it could not affect his retirement.

From the evidentiary facts present in the record and adduced by petitioner, we must conclude that the decedent, having arranged upon retirement for a competence for the rest of his life, made the transfers in question for the purpose of ridding himself of financial cares and worries, for the purpose of pleasing his family, and for the purpose of retaining domestic tranquility—all purposes connected with life, not death. We further conclude that the decedent, at the time of the transfers, did not contemplate death within the meaning of the revenue act.

The respondent has introduced no direct evidence to overcome the conclusion thus reached, and we, therefore, find that any presumption in favor of the respondent has been successfully overcome.

The attorneys' fees which will apparently have to be paid should be allowed as a deduction. *Estate of John E. Cain, Sr.*, 43 B. T. A. 1133.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

---

OPPER, dissenting: Although normally a question of fact, see *United States* v. *Wells*, 283 U. S. 102, about which it would be difficult to disagree on a point of principle, here I am unable to reach the Board's conclusion that the gifts of the house, the debentures and other securities, and the bonds were not made in contemplation of death.

Petitioners labor under a twofold burden of proof. They must show that the "impelling" motive of decedent himself was connected with aspects of life and not of death, *United States* v. *Wells, supra;* and, of course, in order to do so they must disclose to our satisfaction what decedent's motive was. *McCaughn* v. *Real Estate Land Title & Trust Co.*, 297 U. S. 606.

I agree that decedent's motive for the transfers to his wife of the means to purchase annuities has been shown by petitioners; and I agree further that that motive indicates decedent's preoccupation with considerations having to do with life rather than death. But I can not reach the judgment that this record contains any evidence of decedent's own motive with respect to the other transfers, made a year later, nor that it can be supplied by the Board's unfounded speculations as to what that motive might have been. This seems to me reversible error, even though the issue is one of fact, and even though, were there evidence to support it, the Board's decision would be beyond overthrow on review. See *McCaughn* v. *Real Estate Land Title & Trust Co., supra.*

The view that there is no evidence of decedent's own motive is, of course, founded upon the lack of any testimony, not only of what was in the decedent's mind, but of what was upon his lips so far as the reason for the transfers is concerned. And that, of course—"the

transferor's motive"—*United States* v. *Wells, supra,* is the only issue. We know why decedent's family suggested the transfers, but on their own version of the facts their true reasons were withheld from decedent. We know that the reasons they gave him were not the reasons upon which he could have acted, for he made the transfers differently than it is claimed they were suggested. Thus the family lawyer urged that decedent's securities, being liquid, should be transferred to the wife to make it easier for her to collect the family income. The son says he gave this to his father as a reason for the transfer. But the securities were not transferred to the wife. They were given to the sons and daughters-in-law. Although one of the sons testified that he was in no need of financial assistance, decedent's wife says she approached decedent with the question whether "it would not be well to make gifts to the boys * * * at the time when they needed it." She says that in answer "he made no particular objection. He seemed to be perfectly willing to do so if I thought best." And her reason for suggesting that gifts be made to the daughters-in-law was "just because I [*sic*] wanted to help them. That was all."

Everything given as a ground for the Board's assumption that decedent did not make the transfers as "substitutes for testamentary dispositions", *United States* v. *Wells, supra,* is at least equally cogent in the opposite direction. The arrangement of his affairs and retirement, culminating in a virtual abandonment of all his disposable assets, is very near to that process of "putting his house in order" described in *Updike* v. *Commissioner* (C. C. A., 8th Cir.), 88 Fed. (2d) 807; certiorari denied, 301 U. S. 708. Although he may not have been told expressly of the critical nature of his illness, it would be strange if a condition so evident to his family went unperceived by the decedent himself. Since the first of a series of bad falls apparently connected with the illness had already occurred, "while he might not have known that the disease would cause his death, he must have fully realized its seriousness." *Travelers Bank & Trust Co., Executor,* 29 B. T. A. 88, 94. It may even be that decedent's gifts were part of his plan for disposition of the entire estate, for we are not advised when, under what circumstances, or in what manner, his will was fashioned. Cf. *Igleheart* v. *Commissioner* (C. C. A., 5th Cir.), 77 Fed. (2d) 704. But we do know that the gifts went to the natural objects of his bounty. *Myers* v. *United States,* 2 Fed. Supp. 1000, 1012; certiorari denied, 292 U. S. 629; *McClure* v. *Commissioner* (C. C. A., 5th Cir.), 56 Fed. (2d) 548; certiorari denied, 287 U. S. 669. And, finally, the "desire, almost a resignation, to conduct himself according to the wishes of his family" which the majority opinion finds to be decedent's motive is certainly, if a motive at all, and if justified by any affirmative evidence, at least as consistent with knowledge that death was near, "that the

donor is about to reach the moment of inevitable surrender of ownership", *United States* v. *Wells, supra,* as with plans for the future.

While at times such evidence as the foregoing has been considered sufficient to warrant a conclusion that transfers were in contemplation of death, even with the burden upon respondent, e. g., *Travelers Bank & Trust Co., Executor, supra,* or where there was some actual evidence of other motives, e. g., *Igleheart* v. *Commissioner, supra,* here it is found to perform the function of evidence favorable to petitioners; to sustain petitioners' burden; to demonstrate the decedent's impelling motive; and to justify the ultimate finding that that motive was not testamentary in nature. I am unable to concur.

SMITH and TURNER agree with this dissent.