Estate of Charles W. Ford, the Citizens and Southern National Bank, Administrator, v. Commissioner.
Estate of Charles W. Ford, Citizens & Southern Nat'l Bank v. Commissioner
Docket No. 3673.
United States Tax Court
1945 Tax Ct. Memo LEXIS 264; 4 T.C.M. (CCH) 321; T.C.M. (RIA) 45098; March 16, 1945
John W. Townsend, Esq., 1366 Nat. Press Bldg., Washington, D.C., and M. H. Barnes, Esq., 1018 Citizens & Southern Nat. Bank Bldg., Atlanta, Ga., for the petitioner. Frank M. Thompson, Jr., Esq., and S. Earl Heilman, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves a deficiency of $2,273.12 in estate tax. The issues are whether *265 there should be included in the gross estate of the decedent the sum of $19,750 representing payments made by the decedent prior to his death to 20 nephews and nieces in consideration of the promise of each to give him board and care for a period of ten months when requested by the decedent, and whether additional allowances should be made for expenses of administering the decedent's estate. Findings of Fact The petitioner is the duly appointed administrator of the estate of Charles W. Ford, who died intestate at Atlanta, Georgia, on July 18, 1941, at the age of 73 years. The estate tax return was filed with the collector for the district of Georgia. The decedent's wife died in 1939. He never remarried and never had any children. His nearest surviving relatives were certain nieces and nephews. Between March 29, 1940, and April 2, 1940, the decedent transmitted by letter to each of 19 adult nieces and nephews, a check for $1,000, and a check for $750 to another niece, each accompanied by a form of receipt in decedent's handwriting. The decedent had previously loaned $250 to the niece who received the smaller payment and deducted this indebtedness from the check sent to her. The *266 receipts, reading as follows, were signed by the various payees of the checks and returned to the decedent by letter: "Received of Charles W. Ford a check for One Thousand dollars for which I promise to board and care for the said Charles W. Ford for ten (10) months at any time in the future the said Charles W. Ford may desire the said board and care. Should the said Charles W. Ford not choose to take advantage of said board and care, then it is understood I will be relieved of any further obligations to the said Charles W. Ford his heirs and assigns." The contents of the letters were substantially the same as the receipts, all of which receipts were in the possession of the decedent at the time of his death. The decedent did not discuss the payments with the payees of the checks before he mailed them. The decedent never lived with any of the relatives to whom he made the payments, but he had visited with and was fond of them and they were friendly to him. They had homes of their own and were the only relatives of the decedent in a position to give him a home in the event he needed another one. One of them predeceased the decedent. Practically all of them lived outside of Georgia. *267 The decedent never made a demand for the board and care referred to in the receipts. From the time his wife died until his death the decedent lived alone in a 7 or 8 room house he had acquired in 1936. He employed a housekeeper. He was a very religious man, paid cash for what he purchased, and at the time of preparing the receipts for his nephews and nieces to sign, he remarked that he did not want to be under any obligations to any one, and that if he had to make his home with any one of them he wanted to feel that his board and care had been paid for in advance. His desire was to arrange matters so that he would always be welcome in the homes of the payees, if anything happened to him. The decedent's health was good at the time he made the payments. The only serious illness suffered by him prior to his death occurred in about 1924 and involved an infection in a leg. The decedent was a jolly man and had a cheerful outlook on life. He had no physical impairments, had good hearing, wore glasses only to read with, took good care of himself, including his diet, and never complained of heart trouble or any other physical ailment. He drove his own automobile. Practically every day *268 for about 12 years prior to his death he walked from his home to his office, a distance of three or four miles, and frequently walked the return trip. The decedent's business for about 20 years prior to his death was managing about 100 houses, which he owned and rented, principally to Negro tenants. He looked after the properties; did some of the repair work and gave instructions for other necessary work; collected rents; maintained desk space, in the office of a former business associate, from which he conducted his business activities; loaned money, and did his own bookkeeping. Prior to his death decedent expressed his intentions of providing for the college education of a child then about 2 years of age. His plans were never carried out. About one and one-half years before he died the decedent discussed with a business associate the matter of making a will. At that time he remarked that he did not know how to make it, although he had been thinking of it and that he might execute one some time. On the morning of his death, a very warm day, the decedent drove his automobile to one of his tenant houses where he worked from 9 o'clock until late in the afternoon making repairs *269 to the porch roof of the house and cutting down a tree about 10 inches in diameter and cutting up some of the limbs of the tree. After completing the work, he collapsed and died the same day in an ambulance enroute to a hospital. The coroner gave coronary occlusion as the primary cause of decedent's death. His surviving heirs-at-law were 25 nieces and nephews and children of two deceased nieces. Decedent's parents celebrated their fiftieth wedding anniversary. Some of his brothers and sisters lived to be about 70 years of age. The payments aggregating $19,750 made by petitioner to nephews and nieces were not included as a part of decedent's gross estate in the estate tax return filed by petitioner, reporting a gross estate of $88,312.14. In determining the deficiency the respondent included the amount in gross estate with the following explanation: "The foregoing transfers are included in the gross estate under the provisions of 811-(c) of the United States Internal Revenue Code, it having been determined that the checks drawn by the decedent as detailed above were intended as gifts made in contemplation of death, or were intended as gifts to take effect at or after death or *270 at such time as could not be determined without reference to his death." The payments aggregating $19,750 made by the decedent, were not made in contemplation of death, or intended to take effect in possession or enjoyment at or after his death and the enjoyment thereof was not subject at the date of decedent's death to any change through the exercise of a power by decedent alone or in conjunction with any other person to alter, amend, revoke, or terminate. The payments in question are not includible in decedent's gross estate. The petitioner has incurred in connection with these proceedings additional expenses for attorneys' fees, court costs, traveling expenses and bond premiums of the estimated amount of $850. Opinion Respondent contends that the payments to 20 individuals, aggregating $19,750, are includible in the gross estate of decedent under the provisions of section 811 (c) or (d) (1) [1] of the Internal Revenue Code upon the ground that they constituted transfers in contemplation of death or intended to take effect in possession or enjoyment at or after death, or transfers the enjoyment of which was subject to alter ation, amendment, revocation *271 or termination by the decedent. Petitioner contends that the payments were made pursuant to legally binding contracts and, accordingly, there was adequate and full consideration for the payments within the meaning of section 811 (c); that they were not made in contemplation of death or to take effect in possession or enjoyment at death, under section 811 (c) and that there was no transfer subject to alteration, etc., under section 811 (d) (1). *272 We have found as a fact that the payments were not made in contemplation of death or intended to take effect in possession or enjoyment at death. The decedent had only one illness of any consequence prior to his fatal illness and that occurred in 1924, 17 years prior to his death and 16 years before he made the payments. He had no known physical defects for a man of his age and at the time of entering into the agreements and thereafter until the day of his death, enjoyed good health. He was active in business pursuits and walked three or four miles almost every day. His death resulted from a heart attack suffered after a day of physical exertion. It seems plain that decedent was looking ahead to a time when he might need care and attention of relatives whom be believed would give him the services he desired. The motive for the payments is associated with life during a possibly infirm period, rather than with death. Though the length of time of care and support covered by the payments is long, considering the age of the decedent, it is clear, we think, that he was providing for the contingency of long life, and not for that of death. The payments of money took effect immediately, *273 and were not only complete transfers, but were subject to the unrestricted enjoyment of the payees. Use of the money was not dependent in any manner on the death of the decedent. Clearly, this was no transfer intended to take effect at or after death. We conclude that the provisions of section 811 (c) do not here apply. Respondent's argument under section 811 (d) (1) is without foundation in the facts, as we have found. The decedent had put the subject of the transfer, i.e., the money, absolutely beyond his recall. It was in no sense subject at the date of death to "change through the exercise of a power * * * to alter, amend, revoke, or terminate * * *." The idea there was any power to change, within the intendment of the statute, in that decedent could demand the board and care already paid for, is as baseless as it is novel. The transfer was not within the intendment of section 811 (d) (1). In the light of the above conclusions, it is not necessary to consider the arguments as to consideration to the decedent for the payments made. The petitioner has obligated the estate to pay additional administration expenses in the estimated amount of $850 for attorneys' fees, court costs, *274 traveling expenses and bond premiums. The amount is a proper deduction from gross estate. Estate of Millie Langley Wright, 43 B.T.A. 551; Estate of John E. Cain, 43 B.T.A. 1133; Estate of Frank T. Tillotson, 44 B.T.A. 644. Decision will be entered under Rule 50. Footnotes
1. SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, whereever situated, except real property situated outside of the United States - * * * * *
(c) Transfers in Contemplation of, or Taking Effect at Death. - To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter; (d) Revocable Transfers. - (1) Transfers after June 22, 1936. - To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death.↩